47 CCPA

**Application of John F. SHERRILL.**
**Patent Appeal No. 6569.**

United States Court of Customs
and Patent Appeals.
June 14, 1960.

Eugene C. Knoblock, South Bend, Ind. (Dwight B. Galt, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of claims 8, 9 and 11, the only claims remaining in appellant's application serial No. 294,832, filed June 21, 1952, and entitled "Riveting Machine."

Appellant's invention relates to a riveting machine having a reciprocable work-performing head which carries a particular type of rotatable peening or riveting tool. The work-performing head is slidably supported by an upright tubular column and is caused to move from a non-operating to an operating or work engaging position much as is an ordinary drill press. Appellant is concerned with providing a predetermined, positive, positioning of the working head when it is moved into operating position, the actual riveting operation being performed by the separate unit carried by the head.

The work-performing head is slidably supported on the upright column by two arms, one end of each arm being affixed to the head and the other ends having split collars which slidably engage the upright column. Intermediate the slidable collars and secured to the upright column is a fixed collar. The fixed collar supports the lower end of a compressible spring which encircles the upright column, the upper end of the compressible spring engaging the collar of the upper supporting arm and biasing the working head in the raised or non-operating position. A cam is pivotably mounted on the fixed collar and its camming surface engages a roller mounted on the lower arm, so that pivoting of the cam as it engages the roller moves the lower arm and consequently the working head downward against the spring action into operating position. The application discloses that a pneumatic cylinder, controlled by a foot-operated valve, may be used as the power mechanism for pivoting the cam.

The claims are not limited to a riveting machine but are directed to a "device of the class described." Claim 9 is representative and reads:

"In a device of the class described, a vertically disposed column, a work performing head, a pair of collars projecting laterally from said head in spaced relationship and slidably embracing said column, a fixed collar secured to said column between said sliding collars, a spring encircling said column and interposed between one of said sliding collars and said fixed collar, a cam hinged to said fixed collar, a roller carried by the other of said sliding collars and engaged with said cam, and power means supported by said column and operatively connected with said cam."

The references relied on are:

| | | |
|---|---|---|
| Van Sittert | 2,224,708 | December 10, 1940; |
| Schlack | 2,332,935 | October 26, 1943; |
| Kaman | 2,351,049 | June 13, 1944. |

Schlack, the primary reference, shows appellant's combination of an upright tubular column, a longitudinally slidable work-performing head (specifically, a rotating, rivet peening tool) having two support arms slidably engaging the upright column. The head is held in a non-operating or raised position by a spring which is coiled around the column between the upper arm and an intermediate collar fixed on the column. However, for lowering the work-performing head into operating position, Schlack provides a "preferably longitudinally resilient"

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* O'CONNELL, pursuant to provisions of Section 294(d), Title 28 U.S.C.

rod, directly connected between the lower end of the riveting head and a foot operated pedal. This resilient rod is said to eliminate hammering or vibration of the pedal, making it easy to hold the pedal depressed during the riveting operation and thereby reducing operator fatigue.

Kaman shows a portable, power-operated, squeeze riveter having a so-called floating power stroke. The riveter is powered by a fluid pressure cylinder having the usual piston and piston rod. Connected to the piston rod is a pivotable cam which actuates a roller mounted on the riveting tool. The support for the cam is slidable in the direction of the rivet. As the piston moves toward the rivet, the cam and its support move as a unit until the riveting tool engages the rivet. At this point the increased resistance to movement as the tool encounters the rivet prevents further motion of the cam support and the continued motion of the piston pivots the cam, delivering maximum power to the riveting tool for the actual riveting operation.

Van Sittert also shows a portable riveter having a fluid-operated rack and pinion which rotates a cam about a fixed pivot, the pinion and cam being secured to a common shaft. A roller mounted on the riveting tool engages the cam which is shaped to impart a high initial speed to the riveting tool and near the end of the riveting stroke a slow speed with increased power.

The board affirmed the examiner's rejection of claims 8, 9 and 10 as "unpatentable over Schlack as a basic reference in view of Van Sittert and Kaman," summarizing as follows:

"In our opinion it would be uninventive to substitute for the foot power lever and resilient connection of the basic reference any mechanical powered linkage as for example those shown in the secondary references for producing the disclosed motion of the riveting tool of the former reference since the substitution produces no difference in the result obtained from the basic reference.

"It appears to us that the power operator and the linkage could be located alternately on several parts of the basic reference, or the various parts of the power operator and linkage could be divided between several parts of the basic reference and still produce the disclosed mode of operation. Under these circumstances the location of the parts involves only choice or design rather than the exercise of the inventive faculty."

Admittedly appellant's claimed combination is novel as Schlack does not anticipate a cam-actuated riveting head. The question then is whether it would have been obvious to one having ordinary skill in the art to use a cam, mounted as claimed, for moving the work-performing head of Schlack from its raised nonoperating position into the lower riveting position.

Appellant contends here, as he did before the board, that the examiner's combining of the references is unwarranted because the secondary references use a cam to move the riveting tool itself and not to move a work-performing head. He also contends that his device is patentable because it is directed to "positively maintaining the peening tool in selected as well as fixed relationship with respect to the work," the cam functioning to lock the movable head regardless of the pressure applied to the pedal which actuates the cam-rotating piston. Schlack's resilient rod connection, so appellant says, requires a skilled operator to know "just how much pedal depression is required * * * [to produce] the desired setting of the rivet."

What these contentions overlook is that the claims merely recite "a cam pivoted on said column above and resting upon" an abutment which projects laterally from said head. We believe that in keeping with the claims, the use of a fixed pivotable cam for urging a work-performing head into operating position is merely an obvious modification of Schlack. In the first place, a cam, which ap-

pellant has chosen to move his head, is one of the most common and well known mechanical expedients for causing positive relative motion betwen two parts. Such a pivotable cam is shown by both Kaman and Van Sittert for moving parts in riveting machines. Applicant has claimed his machine so broadly, however, that the work-performing head could be a tool for shearing, pressing, drilling or stamping, so long as one of the arms is urged downward by a pivotable cam. As to the particular locations of the cam and its follower, appellant's roller or abutment, all that is necessary is to have one fixed relative to the column and the other slidable relative thereto so that relative motion is produced by cam rotation. Appellant's location of the pivoted cam on the intermediate fixed collar, the follower being a roller or abutment on the lower arm, is a matter of choice well within the skill of the art.

Claims 8 and 11 recite, in addition to the claim 9 elements, a "manual" control for the power means which is connected to the cam, the appellant's supporting disclosure being a foot pedal. Schlack uses a foot pedal to move the resilient rod and Kaman uses a lever grasped by the operator to control the valve of his fluid pressure cylinder. In machine tools such as this, operations are commonly performed in response to an operator's signal such as hand and foot operated controls. This limitation is not of patentable significance. Claim 9, instead of reciting an abutment as the cammed surface, calls for a roller positioned on the sliding collar. This well known expedient for reducing friction and drag is shown by Kaman and Van Sittert. It is our opinion that the combinations set forth in these claims would have been obvious to one skilled in the art and that the board's rejection on the combination of references was correct.

The decision of the Board of Appeals is affirmed.

Affirmed.

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge*